**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**



FILED BY _____ , D.C.

DEC 1 8 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

ERIC SMITH,

              Plaintiff,

v.

BAPTIST HEALTH SOUTH FLORIDA INC.
a Florida Not For Profit Corporation;
BOCA RATON REGIONAL HOSPITAL
INC, a Florida Not For Profit
Corporation; and GASTRO HEALTH
LLC., a Florida Limited Liability
Company,

              Defendants.

**CIVIL ACTION**

**JURY TRIAL DEMANDED**

**COMPLAINT**

1.     Plaintiff, Eric Smith, ("Plaintiff or "Smith")  brings this action against

Defendants, BAPTIST HEALTH SOUTH FLORIDA INC., BOCA RATON REGIONAL

HOSPITAL INC., and GASTRO HEALTH LLC., (collectively herein referred to as

"Defendants") to secure redress for Defendants  violations of 1.) Title III of the

Americans with Disabilities Act of 1990 (42 U.S.C. § 12181 *et seq.);*  2.) Section 504 of

The Rehabilitation Act of 1973 (29 U.S.C. § 791 *et seq.*); and,  3.) The Florida Omnibus

AIDS Act of 1988 (Florida Statutes § 60.50.) Specifically, Plaintiff Smith alleges that

Defendants failed to provide Plaintiff with information and consultation for

diagnostic surgeries, referred him to a separate and unequal medical facility and

1 a

refused hm critical postoperative medical care and denied him access to his medial records, solely because he is infected with Human Immunodeficiency Virus ("HIV"), the virus that causes AIDS –*a federally protected disability.*

## JURISDICTION AND VENUE

2.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, 42 U.S.C. § 12188 and 29 U.S.C. § 791. and supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's claims under Florida law.

3.     Plaintiff Smith's claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

4.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (2) in that this is the judicial district in which Defendants reside, and in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

5.     Plaintiff Smith, is and at all times relevant hereto, was a resident of Broward County, Florida and is otherwise *sui juris.*

6.     At all times relevant to this Complaint, Plaintiff Smith has been a person living with HIV, a physical impairment that substantially limits one or more major life activities, including the operation of Plaintiff Smith's immune system, which is a major bodily function. Accordingly, Plaintiff Smith has a disability within the meaning of 42 U.S.C. § 12102, 28 C.F.R. § 36.104 and Florida Statutes § 760.50.

7.     Defendant, BAPTIST HEALTH SOUTH FLORIDA INC. ("BAPTIST") is a Florida not-for-profit healthcare system, and conducts its business activities

2 a

throughout the State of Florida. BAPTIST's principal place of business is located at 6855 Red Road Suite 600 Coral Gables, Florida 33143.

8.      According to Defendant BAPTIST'S website (https://baptist health.net) Defendant BAPTIST's extensive healthcare system employs over 23,000 individuals including 4,000 physicians who serve more than 1.5 million patients every year via a comprehensive network of facilities, services and providers, including 11 hospitals, one of which is Boca Raton Regional Hospital ("BRRH")

9.      Defendant BAPTIST is a recipient of federal financial assistance, and is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

10.     Defendant BAPTIST leases (or leases to), or operates a place of public accommodation within the meaning of 42 U.S.C. § 12182(a), and is considered a place of public accommodation because it affects commerce and is a service establishment within the meaning of 42 U.S.C. § 12181(7).

11.     Defendant, BOCA RATON REGIONAL HOSPITAL INC. ("BOCA REGIONAL") is a Florida not-for-profit regional hospital and is doing business in Palm Beach County, Florida. Defendant BOCA REGIONAL's principal place of business is located at 800 Meadows Road Boca Raton, Florida 33486.

12.     According to Defendant BOCA REGIONAL's website (https://www.brrh.com) and Defendant BAPTIST's website (https://baptisthealth.net/en/facilities/boca-raton-regional-hospital) BRRH is an

"advanced, tertiary medical center with 400 beds, 2,800 employees and more than 800 primary and specialty physicians.on staff."

13.     Defendant BOCA REGIONAL is a recipient of federal financial assistance, and is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

14.     Defendant BOCA REGIONAL leases (or leases to), or operates a place of public accommodation within the meaning of 42 U.S.C. § 12182(a), and is considered a place of public accommodation because it affects commerce and is a service establishment within the meaning of 42 U.S.C. § 12181(7).

15.     Defendant GASTRO HEALTH LLC, ("GASTRO")  is a Florida limited liability company, with *fifty* individual locations throughout the  state of Florida. Defendant GASTRO's principal place of business is located at 9500 S Dadeland Blvd, Suite 200 Miami, FL 33156.

16.     According to Defendant GASTRO'S website (https://gastrohealth.com), Defendant GASTRO claims that it has "affiliations with premier hospitals;" one of which being Defendant BAPTIST'S BRRH.

17.     Further, according to Defendant Defendant GASTRO'S website (https://gastrohealth.com) "Gastro Health participates with Medicare and most major insurance companies." Accordingly, Defendant GASTRO is a recipient of federal financial assistance, and is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

18.     Defendant GASTRO leases (or leases to), or operates a place of public accommodation within the meaning of 42 U.S.C. § 12182(a), and is considered a place of public accommodation because it affects commerce and is a service establishment within the meaning of 42 U.S.C. § 12181(7).

## FACTUAL ALLEGATIONS

19.      At all times relevant to this complaint, Plaintiff Smith has been infected with the Human Immunodeficiency Virus ("HIV"), the virus that causes Acquired Immunodeficiency Syndrome ("AIDS").

20.     Consequently, Plaintiff Smith has a physical impairment – HIV/AIDS – that substantially limits one or more of his major life activities.

21.     On or about July 6, 2019 Plaintiff Smith presented himself to the Emergency Department of BRRH seeking treatment for pain while having bowel movements.

22.     While waiting to be examined at BRRH, Plaintiff Smith completed Defendant BOCA REGIONAL's required paperwork, and in doing so, disclosed he was infected with HIV/AIDS; accordingly, at all times relevant to this Complaint, Defendants regarded Plaintiff Smith as having HIV/AIDS.

23.     On or about July 6, 2019, subsequent to Plaintiff Smith's examination in the Emergency Department of BRRH the Emergency Department physician, admitted Plaintiff Smith to BRRH for further evaluation.

24.     Despite Defendant BAPTIST and Defendant BOCA REGIONAL's knowledge that Plaintiff Smith was a self pay patient Plaintiff Smith was placed in a

privte suite style room on the  oncology floor at BRRH and was kept separate from other patients, and only seen by medical staff when absolutely necessary.

25.)     Every year the THe Human Rights Campaign "HRC" publishes a report known as the annual Health equality index.

26.)     HRC's Healthcare Equality Index rates hospitals on how well they treat LGBT patients, workers and visitors.

27.)     According to the 2017 HRC report,  Boca Raton Regional Hospital was the lowest ranking hospital in the state of Florida, scoring a 25 out of 100.

28.)     Specifically, Defendant BOCA REGIONAL's low rating was due to its lack of Training in LGBTQ Patient Centered Care, Patient Services and Support and Patient & Community Engagement.

29.)     According to the HRC Defendant BOCA REGIONAL has consistently earned low marks from the HRC since it was first rated in 2013.

30.)     On or about July 9, 2019, Dr. James Chong, an employee of Defendant GASTO, performed a colonoscopy on Plaintiff Smith.

31.)     On or about July 9, 2019, while Plaintiff Smith was waking up from the anesthesia administered for the above referenced colonoscopy, and while still in the recovery room, Dr. James Chong, walked up to Plaintiff  and said  "*you got HIV and* now *you have cancer* " and walked away.

32.)     Dr. James Chong's outrageous conduct humiliated Plaintiff Smith and caused extreme mental anguish, and, on information and belief, was made to suggest that Plaintiff Smith was to blame for his medical condition.

33.)     Further, Plaintiff Smith alleges that that the abominable statement made by Dr. James Chong was was witnessed by one of more of the surgical nurses in the

room at the time, as prior to a later on surgery on July 11 2019, a member of the surgical nurse team  specifically told Plaintiff Smith she was shocked when she herard Dr. James Chong's statement.

34.)    Dr. James Chong's purpose in  Plaintiff Smith with this quick and careless cancer diagnosis was to  intentionally inflict emotional distress on Plaintiff Smith, solely because he was infected with HIV/AIDS.

35.)    On information and belief, Defendants do not provide cancer diagnosis to other patients while still waking up from anesthesia or prior to receiving a pathology report for similar diagnostic surgeries.

36.)    On or about July 10 2019, subsequent to Dr. James Chong's cancer diagnosis Defendant BAPTIST and Defendant BOCA REGIONAL discharged Plaintiff Smith from Boca Raton Regional Hospital and referred Plaintiff to Delray Medical Center for further treatment, solely because of HIV/AIDS disability.

37.)     On or about July 10, 2019 after being informed he was is being discharged from BRRH, Plaintiff Smith asked Dr. Chase Van Mol, (Plaintiff Smith's attending Physician and an employee of Defendants BAPTIST and BOCA REGIONAL) if it was possible to have further outpatient imaging, evaluation and/or consultation in regards to the cancer diagnosis provided to him on or about July 9, 2019 by defendant GASTRO's employee Dr. James Chong

38.)    In response to Plaintiff Smith's question,  Plaintiff Smith was told by Dr. Chase Van Mol, because he was infected with HIV/AIDS Delray Medical Center would

7 a

be a more appropriate hospital for further evaluation and/or treatment, because he has HIV.

39.)    On or about July 10, 2019 at approximately 10:45AM Plaintiff Smith was handed a print out of a portion of his medical records by Dr. Chase Van Mol that specified the cancer that Dr. James Chong diagnosed Plaintiff Smith with in the recovery room of BRRH, as well as the statement of the cancer and the recommended treatment. *See* Exhibit B

40.)    Exhibit B is the sole page of Plaintiff Smith's 177  page medical record for the time he was admitted to BRRH  that indicates the specific cancer, staging of cancer **and** recommendations, or in other words, *referrals*  for further evaluation/treatment.

41.)    The time and date that Exhibit A was printed was July 10, 2019 at 10:39AM,  which is displayed in the lower right hand corner of the document, this is also the approximate time/date of Plaintiff Smith's discharge from Boca Raton Regional Hospital and **referral** to Delray Medical Center.

42.)    The purpose in providing Plaintiff Smith with the aforementioned medical record was for Plaintiff  Smith to provide it to Delray Medical Center for further and *separate* treatment, because of his HIV status– *despite the fact that the treatment Plaintiff was seeking was within the scope and expertise of Defendants BAPTIST, BOCA REGIONAL and GASTRO.*

43.)    Defendant BOCA REGIONAL does not provide other patients with portions of their internal medical records, (unless requested)  besides standard discharge information, at the time of discharge from  BRRH.

44.)    On or about July 11, 2019 Plaintiff Smith was required to return Boca Raton Regional Hospital for a second colonoscopy, which was performed by Dr. Morris Nauss.

45.)    On or about Monday July 15, 2019 Plaintiff Smith contacted Defendant BOCA REGIONAL by telephone at approximately 1:45PM requested that either Dr. James Chong, Dr. Morris Nauss, Dr. Chase Van Mol or any qualified physician, nurse and/or hospitalist contact him, as he was not sure if he should seek cancer treatment or not since he was never consulted on the findings of the pathology from either procedure.

46.)    On or about July 17, 2019 that after many unreturned calls to Defendants, Plaintiff sent Defendant GASTRO HEALTH LLC an email *See* [Exhibit "C"] demanding information and consultation in regards to the diagnostic surgeries performed by Defendant GASTRO.

47.    On or about July 17, 2019 shortly after Plaintiff' Smith's email was sent, Plaintiff Smith received a response from a secretary stating:

> "Here are the pathology results. Dr Naus said they are negative for cancer. Sometimes the cells show up looking like cancer but they are not. So Sorry for any confusion or misinformation. Dr Naus said you should follow up with an infectious disease doctor or colorectal surgeon." *See* [Exhibit "C"]

48.)    Despite the fact that Dr. Naus, an employee of Defendant GASTRO, is a colorectal surgeon, and, in fact, previously performed colorectal surgery on Plaintiff, Dr. Morris Naus still decided to refer Plaintiff to follow up with a

**different** colorectal surgeon and/or AIDS specialist.

49.     To date, Defendants never scheduled an appointment for Plaintiff Smth to have PET scan diagnostic imaging testing, further consultation, evaluation or any other treatment, despite multiple requests for these services made by Plaintiff Smith..

50.)    On information and belief, Defendants provide other patients with available information regarding surgical procedures and medical treatment and do not refer other patients to separate health care facilities for treatment so as long as the treatment the patient is seeking is inside the expertise of Defendants.

51.)    On information and belief, PET/CT imaging, consultation on results of pathology reports from diagnostic surgeries and further evaluation and treatment of cancer is inside the scope and expertise of Defendants.

52.)    On or about July 19, 2019, Plaintiff Smith sought psychiatric treatment from Dr. Mark Agresti for the serious psychological and emotional distress he had endured as a result of Defendants' discriminatory conduct. It was not until this meeting that Plaintiff Smith was consulted on the pathology reports obtained by Plaintiff Smith from Defendant GASTRO on July 17 2019. Dr. Mark Agresti and his medical staff were aware of Plaintiff Smith's HIV status.

53.)    Since Plaintiff Smith's appointment with Dr. Mark Agresti on July 19 2019, Plaintiff Smith, has had to be treated on a monthly basis by for the emotional distress suffered as a result of the actions Defendants and their employees.

54.)    Defendants actions were intentional, with reckless disregard, and

with deliberate indifference to the rights and needs of Plaintiff Smith.

55.)    As a result of the actions of the Defendant's their employees Plaintiff Smith  was humiliated, and suffered severe mental anguish and emotional duress. Further, because lead to believe he was going to die from terminal cancer Plaintiff Smith continues to experience extreme mental anguish, and  has lost trust in medical professionals and experiences panic attacks in medical or hospital settings, which has severely interfered with the treatment of his HIV/AIDS medical condition.

56.)    Plaintiff Smith has, in the days preceding the filing of this Complaint with this Court, begun to experience similar symptoms to those he experienced  prior to his admittance to Defendant BAPTIST's Baptist Boca Raton Regional Hospital in July. Accordingly, Plaintiff Smith wishes to and intends to return to Boca Raton Regional Hospital within the next 6 months, or less, and would like to seek the evaluation and consultation of Defendant GASTRO for treatment, for the following reasons:

A.    Defendants BAPTIST, BOCA REGIONAL and GASTRO have a large portion of in this regard and have performed two individual colorectal diagnostics surgurgies on Plaintiff Smith.

B.    Boca Raton Regional Hospital is in close proximity to Plaintiff's home and in an area frequently traveled by Plaintiff.

57.)    What's more, Plaintiff Smith has visited BAPTIST's Boca Raton Regional Hospital numerous times between 2015 and the present.

58.)    On or about November 10, 2018, Plaintiff visited BAPTIST's Boca Raton Regional Hospital to accompany his Mother, whom is he the sole caregiver for who was treated for ten (10) days for multiple ongoing illnesses.

59.)    Plaintiff Smith's  Mother has recently been diagnosed with a rare form of cancer known as Cortana is T-cell lymphoma and accordingly Plaintiff Smith's Mother wishes and intends to seek treatment at Boca Raton Regional hospital within the next six months.

60.)    Accordingly, Plaintiff demonstrates he and his Mother  have varying and ongoing medical issues, some of which require continued treatment, and unless Defedentas are enjoined by this Court, Plaintiff Smith and his Mother will face further discrimination and refusedal of much needed medical treatment.

61.)    In order to receive Medicaid/Medicare funding, Defendants are required to develop policies and procedures that ensure that persons with HIV/AIDS will receive adequate an equal treatment.

62.)    Each time Defendants recertify for Medicaid/Medicare funding, they promise that they will provide and adhere to such policies.

63.)    On information and belief, Defendants have not provided proper training on the treatment of patients who have HIV/AIDS.

64.)    On information and belief, at all times relevant to this Complaint, Defendants BAPTIST HEALTH SOUTH FLORIDA, INC., BOCA RATON REGIONAL HOSPITAL INC. and GASTRO HEALTH LLC have accepted and continue to accept funds

from Medicare and/or Medicaid as payment for health care services they each
rendered to certain individuals.

**COUNT I**
**(Against all Defendants)**
**VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

65.   Plaintiff realleges paragraphs 1 – 64 of this Complaint as if fully set
forth herein.

66.   Under Title III of the ADA, no person who owns, leases or operates a
place of public accommodation may discriminate against an individual on the basis of
disability in the full and equal enjoyment of the goods, services, facilities, privileges,
advantages, or accommodations of a place of public accommodation. 42 U.S.C. §
12182(a); 28 C.F.R. § 36.201(a).

67.   Defendants discriminated against Plaintiff by denying him the
opportunity to participate in or benefit from the goods, services, facilities, privileges,
advantages, or accommodations of Defendants on the basis of his HIV/AIDS disability,
in violation of 42 U.S.C. § 12182 and 28 C.F.R. § 36.201.

**WHEREFORE**, Plaintiff Eric Smith, prays for the following relief:

    a.   Declaratory Judgment at the commencement of this action that
Defendants including its, employees, staff, and agents acting within the
scope of their employment with Defendants, are in violation of Title III
of the ADA, 42 U.S.C. § 12182, and its implementing regulation, 28 C.F.R.
Part 36;

b.   A permanent injunction directing Defendants to refrain from discriminating against any individual on the basis of disability, including HIV or AIDS, in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations offered at any of its current or future locations;

c.   An order requiring that, for each potential customer/patient who is not accepted as a patient because of his or her disability, including but not limited to HIV or AIDS, Defendants create a written file and maintains the written file for at least two years from the date the potential customer/patient is not accepted. Each file must identify all persons involved in the determination and must include written documentation supporting the basis for the determination;

d.   An order requiring Defendants to submit a draft non-discrimination policy to this Court for its review and approval. The non-discrimination policy will state that it does not discriminate in the provision of services to persons with disabilities, including persons who have HIV or AIDS. Once it has been approved by the Court, Defendants will adopt, maintain, and enforce the non-discrimination policy for the duration of this Agreement. This policy statement will be conspicuously posted in the reception area of each current and future location in which each Defendant conducts business, and on the main webpage or "homepage,"

14 a

of each Defendant  as well as on the homepage of any current or future website each Defendant uses for their businesses;

e.  An order requiring Defendants to provide training on Title III of the ADA to all of its employees, including training about HIV/AIDS and discrimination in general. In addition, Defendants will ensure that all new employees, who are involved with admissions or treatment of customers receive the training referenced herein as a component of new employee training and orientation. Defendants shall provide training to new employees within thirty (30) days of their start date. Employees whose duties will involve the record-keeping provisions set forth above shall also be trained on how to implement those provisions. Defendants shall create and maintain an attendance log that documents the name of each individual who attends the trainings, his or her title, and the date he or she attended the training;

f.  Payment of costs of suit;

g.  Costs and reasonable attorneys' fees, pursuant to 42 U.S.C § 12205 and 28 CFR § 36.505; and,

h.  The provision of whatever other relief the Court deems just, equitable and appropriate.

**COUNT II**
**(Against all Defendants)**
**VIOLATIONS OF SECTION SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 USC § 706**

68.     Plaintiff realleges paragraphs 1 – 64 of this Complaint as if fully set forth herein.

69.     As a result of Plaintiff's HIV/AIDS, Plaintiff has a physical impairment that substantially limits one or more of his major life activities such that he is an individual with a disability within the meaning of the Rehabilitation Act.

710     In addition, Defendants regarded Plaintiff as an individual with a disability within the meaning of the Rehabilitation Act.

71.     In providing health care services at Boca Raton Regional Hospital to individuals for whom payment is made through Medicare and/or Medicaid, each Defendant conducts a "program or activity" receiving federal financial assistance within the meaning of the Rehabilitation Act.

72.     At all times relevant to this Complaint, Plaintiff Smith was otherwise qualified to receive the health care services of the Defendants.

73.     Each Defendant denied Plaintiff Smith the benefits of, and/or subjected Plaintiff to discrimination in the provision of, the services of the program or activity conducted by that Defendant solely by reason of Plaintiff's disability.

74.     By denying Plaintiff Smith the benefits of, and/or subjecting him to discrimiation in the provision of, the services of the program or activity it conducts solely because of his disability, each Defendant violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

**WHEREFORE**, Plaintiff Eric Smith prays for the following relief:

a.  An injunction against Defendants, their agents and employees, preventing them from unlawfully discriminating against him based on his disability;

b.  Compensatory and actual damages in an amount to be determined at trial;

c.  Payment of costs of suit;

d.  Costs and reasonable attorneys' fees, pursuant to 42 U.S.C § 12205 and 28 CFR § 36.505; and,

e.  Such other and further relief as this Court deems just and proper.

<u>**COUNT III**</u>
**(Against All Defendants)**
**VIOLATIONS OF FLORIDA STATUTE § 760.50**

75.  Plaintiff realleges paragraphs 1 – 64 of this Complaint as if fully set forth herein.

76.  Each Defendant discriminated against Plaintiff in violation of Florida Statute §760.50 (4)(a) when they refused to provide medical services to Plaintiff on the basis of the fact that Plaintiff is HIV positive.

77.  The Florida Omnibus AIDS Act stipulates that all licensed healthcare providers must take a course on HIV/AIDS. Defendants are require by FLorida law to educate their entire workforce on HIV infection, standards for testing, confidentiality, informed consent, reporting requirements, and discrimination (FDOH, 2013)

78.  In 1989, the Florida Legislature amended the Florida Omnibus AIDS Act by removing limiting language and converted § 760.50 into a general reference

statute by incorporating the terms of other statutes for the protection of the disabled into § 760.50, as §(2), and allowing the remedy as provided under § 760.50(6), in addition to any other remedy under the other statutes.

79.     Section 760.50(2), provides: "Any person with or perceived as having acquired immune deficiency syndrome, acquired immune deficiency syndrome related complex, or human immunodeficiency virus shall have every protection made available to handicapped persons."

80.     Section 413.08, makes it illegal to for "any person, firm, or corporation, or the agent of any person, firm, or corporation, who denies or interferes with admittance to, or enjoyment of, a public accommodation or otherwise interferes with the rights of an individual with a disability or … commits a misdemeanor of the second degree."

81.     Defendants, intentionally and unjustifiably discriminated against Plaintiff because of his HIV status.

82..     Defendants are people as defined by § 760.50, and are not permitted to discriminate against an otherwise qualified individual in housing, public accommodations, or governmental services on the basis of the fact that such individual is, or is regarded as being infected with human immunodeficiency virus. 27.

83.     In view of the actual knowledge of the prohibitions under the law from the training to be licensed under the state of Florida, the acts of the Defendants were intentional or made with deliberate indifference to the rights of Plaintiff.

**WHEREFORE**, Plaintiff Eric Smith prays for the following relief:

    a.   An injunction against Defendants, their agents and employees, preventing them from unlawfully discriminating against him based on his disability;

    b.  The higher of liquidated damages or $5,000 for the intentional or reckless violations of the Florida Omnibus AIDS Act.

    c.  Payment of costs of suit;

    d.  Costs and reasonable attorneys' fees, pursuant to 42 U.S.C § 12205 and 28 CFR § 36.505; and,

    e.  Such other and further relief as this Court deems just and proper.

### JURY DEMAND

84.    Plaintiff hereby demands a trial by jury.

### DOCUMENT PRESERVATION DEMAND

85.    Plaintiff demands that Defendant preserves and protects all relevant documents, records, and information (including when in electronic form) from being discarded, written over, altered, deleted, damaged, or otherwise made unavailable or inaccessible; and takes affirmative measures to retain, collect, and insure that no potentially relevant documents, records, or information (including electronic information) are inadvertently altered, lost, or destroyed

Dated: December 17, 2019

Respectfully Submitted,

_____
ERIC A. SMITH

Eric Smith
*Pro se Plaintiff*
520 North Ocean Blvd. Unit 19
Pompano Beach, FL 33062
(Telephone) 954.288.2265
*(Email) easmith.fl@gmail.com*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on this 17th day of December 2019, I personally filed this Complaint with the Clerk of Court in Fort Lauderdale, Florida. I also certify that the aforementioned documents are being served on all counsel of record, corporations, or pro se parties identified on the attached Service List in the manner specified via Service of Process by an authorized Process Server or by the United States Marshal Service, shall this Court deem appropriate.  Additionally, a courtesy copy of this Complaint has been sent by email to Julie Waas, Esq., counsel for Defendants BAPTIST HEALTH SOUTH FLORIDA, INC. and Defendant BOCA RATON REGIONAL HOSPITAL INC. at JulieWa@baptisthealth.net

By:_____

       ERIC A.  SMITH

**SERVICE LIST**

**BAPTIST HEALTH SOUTH FLORIDA, INC.**
REGISTERED AGENT: FRIEDMAN, DAVID R.
6855 Red Road Suite 500 Coral Gables, Florida 33143

*VIA PROCESS SERVER*

**BOCA RATON REGIONAL HOSPITAL INC.**
REGISTERED AGENT: FRIEDMAN, DAVID R.
6855 RED ROAD SUITE 500 CORAL GABLES, FL 33143

*VIA PROCESS SERVER*

**GASTRO HEALTH LLC**
REGISTERED AGENT: NRAI SERVICES, INC.
1200 SOUTH PINE ISLAND ROAD PLANTATION, FL 33324

*VIA PROCESS SERVER*

**General Counsel for Defendants BAPTIST and BOCA REGIONAL**

**Julie R R Waas**
Florida Bar Number:604331
6855 SW 57th Ave Ste 500
Coral Gables, FL 33143-3623
Office: 786-662-7022
Cell: 786-662-7022 -
Fax: 786-662-7332
JulieWa@baptisthealth.net

# EXHIBIT A





**Novant Health Forsyth Medical Center**
Winston-Salem, NC
4 year HEI participant
Leader in LGBTQ Healthcare Equality

**Appendix B: HEI 2017 Criteria and Score Breakdown by Facility**

**KEY:** Facilities listed by state, then city | dark color = HEI 2017 Participant |
● / Full Score | ◑ / Partial Score | / No Score | -25 points | blank space = not applicable
⊟ 2017 Leader in LGBTQ Healthcare Equality | Top Performer

| | | | 1 | | | | 2 | 3 | 4 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Rank | Facility Name | City | Patient Non-Discrimination (10 pts) | Equal Visitation (10 pts) | Employment Non-Discrimination (10 pts) | Training in LGBTQ Patient Centered Care (10 pts) | Patient Services and Support (20 pts) | Employee Benefits and Policies (20 pts) | Patient & Community Engagement (10 pts) | Responsible Citizenship (-25 pts) | Grand Total (Sum) |
| | **DISTRICT OF COLUMBIA** | | | | | | | | | | |
| | MedStar National Rehabilitation Hospital | Washington | ● | ◑ | ● | ● | ◑ | | | | 50 |
| | MedStar Washington Hospital Center | Washington | ● | ● | ● | ● | ◑ | | | | 55 |
| | Sibley Memorial Hospital | Washington | ● | ● | ● | ● | ● | ◑ | ● | | 90 |
| | VA Washington DC Medical Center | Washington | ● | ● | ● | ● | ● | ● | ◑ | | 85 |
| ⊟ | Whitman-Walker Health | Washington | ● | ● | ● | ● | ● | ● | ● | | 100 |
| | **FLORIDA** | | | | | | | | | | |
| ⊟ | VA Bay Pines Healthcare System | Bay Pines | ● | ● | ● | ● | ● | ● | ● | | 100 |
| | Boca Raton Regional Hospital | Boca Raton | ◑ | ● | | | | ◑ | | | 25 |
| | Baptist Medical Center Nassau | Fernandina Beach | ● | ● | ● | | | ◑ | | | 35 |
| ⊟ | Florida Medical Center - A Campus of North Shore | Fort Lauderdale | ● | ● | ● | ● | ● | ● | ● | | 100 |
| | VA North Florida/South Georgia Veterans Healthcare System | Gainesville | ● | ● | ● | ● | ● | ● | ◑ | | 95 |
| | Baptist Medical Center Jacksonville | Jacksonville | ● | ● | ◑ | | | ◑ | | | 35 |
| | Baptist Medical Center South | Jacksonville | ● | ● | ● | | | ◑ | | | 35 |
| | Mayo Clinic | Jacksonville | ● | ● | | ◑ | ● | ● | | | 85 |
| | Mayo Clinic Hospital | Jacksonville | ● | ● | | ◑ | ● | ● | | | 85 |
| | Wolfson Children's Hospital | Jacksonville | | | | | | ◑ | ◑ | | 40 |
| | Baptist Medical Center Beaches | Jacksonville Beach | ● | ● | ◑ | | | ◑ | | | 35 |
| | Largo Medical Center | Largo | ● | ● | ● | ● | ◑ | ● | | | 75 |
| ⊟ | Care Resource | Miami | ● | ● | | ● | ● | ● | ● | | 100 |
| | Holtz Children's Hospital & JMH Women's Services | Miami | ● | ● | ● | ● | ◑ | ● | ● | | 85 |
| | Jackson Behavioral Health Hospital | Miami | ● | ● | ● | ● | ◑ | ● | ● | | 85 |
| | Jackson Memorial Hospital | Miami | ● | ● | ● | ● | ◑ | ● | ● | | 85 |
| | Jackson Rehabilitation Hospital | Miami | ● | ● | ● | ● | ◑ | ● | ● | | 85 |
| | Jackson South Community Hospital | Miami | ● | ● | ● | ● | ◑ | ● | ● | | 85 |
| ⊟ | University of Miami Hospital | Miami | ● | ● | | ● | ● | ● | ● | | 100 |
| ⊟ | VA Miami Healthcare System | Miami | ● | ● | ● | ● | ● | ● | ● | | 100 |
| | Jackson North Medical Center | North Miami Beach | ● | ● | ● | ● | ◑ | ● | ● | | 85 |
| | Health Central Hospital | Ocoee | ● | ● | ● | | ◑ | | | | 55 |
| ⊟ | VA Orlando Medical Center | Orlando | ● | ● | ● | ● | ● | ● | ● | | 100 |
| | Westside Regional Medical Center | Plantation | ● | ● | ● | | | ◑ | | | 40 |

# EXHIBIT B



**BOCA RATON**
REGIONAL HOSPITAL

| | | |
|---|---|---|
| Patient Name: | **SMITH, ERIC** | |
| Date of Birth: | **5/27/1986** Age: **33 years** | Gender: **Male** |
| MRN: | **001428502** | Admit Date: **7/6/2019** |
| FIN: | **1918700311** | Discharge Date: |
| Admitting MD: | **Van Mol,MD,E Chase** | |

## *Consultation Notes*

palpable.
EXTREMITIES: Full ROM in all 4 extremities. No clubbing, cyanosis or edema. No Homans'
sign.
NEUROLOGICAL: Nonfocal. Alert and oriented x 3.

### Impressions
33-year-old male HIV positive that presented with rectal bleeding he had
colonoscopy done and the report showed and an old mass around 3-4 cm. He had CT
scan that did not show significant lymphadenopathy also on physical exam I did
not appreciate inguinal lymph nodes. So he is at least T2 tumor. To evaluate more
specific his staging PET-CT scan would be advisable after discharge from the hospital. The
path report is not yet available but for and now squamous cell carcinoma the
usual recommendation is concurrent chemoradiation. We will await the final pathology
report and discuss further plans with the patient.

Thank you for the consultation will continue to follow

### Assessment/Plan
1. Anal lesion
2. Rectal bleeding
3. LLQ abdominal pain
4. HIV disease
5. Non compliance w medication regimen

06:43:00)
Hemoglobin: 11.8 g/dL Low (07/09/19 06:43:00)
Hematocrit: 36.3 % Low (07/09/19 06:43:00)
Platelet Count: 297 K/mcL (07/09/19 06:43:00)
MCV: 86.4 fL (07/09/19 06:43:00)
MCH: 28.1 pg (07/09/19 06:43:00)
MCHC: 32.5 g/dL Low (07/09/19 06:43:00)
RDW: 13.4 % (07/09/19 06:43:00)
Nucleated RBC'S: 0 /100(WBCs) (07/09/19 06:43:00)
Absolute Nucleated RBC Count: 0 x10^3/mcL (07/09/19 06:43:00)
Sodium Level: 141 mmol/L (07/09/19 06:43:00)
Potassium Level: 4 mmol/L (07/09/19 06:43:00)
Chloride Level: 107 mmol/L (07/09/19 06:43:00)
CO2: 29 mmol/L (07/09/19 06:43:00)
Glucose Level: 96 mg/dL (07/09/19 06:43:00)
BUN: 4 mg/dL Low (07/09/19 06:43:00)
Creatinine: 0.9 mg/dL (07/09/19 06:43:00)
GFR, African American: >60 mL/min/1.73 m2 (07/09/19 06:43:00)
GFR, Non African American: >60 mL/min/1.73 m2 (07/09/19 06:43:00)
Calcium Lvl: 8.3 mg/dL Low (07/09/19 06:43:00)

### Imaging Results (Last 24 Hours)
No qualifying data available.

### Advance Directive
Advance Directive:No - - 07/09/2019 07:50

### Code Status
Not yet documented

Print Date/Time: **7/10/2019 11:06 EDT**

Report ID: **37784586**

Printed By: MATHEWS-D'AVANZO, NP,MARGARET

**Boca Raton Regional Hospital**
**800 Meadows Road, Boca Raton, FL 33486**

# EXHIBIT C

Your anticipated prompt attention to this matter is appreciated.

Kind Regards,
Eric Smith


Eric Smith
520 Florida Highway A1A
Pompano Beach, Florida 33062
(Telephone) 954-288-2265
(Email) easmith.fl@gmail.com


CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.


Eric Smith

520 Florida Highway A1A

Pompano Beach, Florida 33062
(Telephone) 828-209-8761

(Email) easmith.fl@gmail.com


CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.
[Quoted text hidden]

**Eric Smith** <easmith.fl@gmail.com>                    Wed, Jul 17, 2019 at 3:54 PM
To: Hope Goodman <hkerwit@gastrohealth.com>
Bcc: tas0727 tas <tom.smith0727@gmail.com>

Hope,
Have you received the pathology report yet? It is now late Wednesday afternoon and the surgery was done at 9 am on Friday morning.  It is very distressing to be told I have cancer by Dr.Chung and then called up and told that I may not have cancer, then brought back in for another surgery and to make matters worse to not hear anything back from the Doctor after requesting to speak to him.


I need to know one way or another if I have cancer so I can begin chemoradiation or not.

Please contact me.

Thank you,
Eric
Eric Smith
520 Florida Highway A1A Apt. 19
Pompano Beach, Florida 33062
(Telephone) 954-288-2265
(Email) easmith.fl@gmail.com

CONFIDENTIALITY NOTICE: The contents of this email message and any
attachments are intended solely for the addressee(s) and may contain
confidential and/or privileged information and may be legally
protected from disclosure. If you are not the intended recipient of
this message or their agent, or if this message has been addressed to
you in error, please immediately alert the sender by reply email and
then delete this message and any attachments. If you are not the
intended recipient, you are hereby notified that any use,
dissemination, copying, or storage of this message or its attachments
is strictly prohibited.

On Mon, Jul 15, 2019 at 9:58 AM Hope Goodman <hkerwit@gastrohealth.com> wrote:
>
>
>
[Quoted text hidden]

**Hope Goodman** <hkerwit@gastrohealth.com>                    Wed, Jul 17, 2019 at 4:40 PM
To: "easmith.fl@gmail.com" <easmith.fl@gmail.com>

Here are the pathology results. Dr Naus said they are negative for cancer. Sometimes the cells
show up looking like cancer but they are not. So Sorry for any confusion or misinformation. Dr
Naus said you should follow up with an infectious disease doctor or colorectal surgeon.


**Hope Goodman**
Care Coordinator
Gastro Health, LLC - CC21
5455 Fenton Blvd Ste. 202, Delray Beach FL 33445-6615
T 561.495.5700 / 561.495.2020
hgoodman@gastrohealth.com / www.gastrohealth.com
This Email transmission may contain confidential health information that is privileged and legally
protected from disclosure by the Health Insurance Portability and Accountability Act (HIPAA). This
information is intended only for the use of the individual or entity named above. If you are not the
intended recipient, you are hereby notified that reading, disseminating, disclosing, distributing,
copying, acting upon or otherwise using the information contained in this Email is strictly
prohibited. If you have received this information in error, please notify the sender immediately at
(305) 913-0666 and delete this email.


**From:** Eric Smith <easmith.fl@gmail.com>
**Sent:** Wednesday, July 17, 2019 3:54 PM
**To:** Hope Goodman
**Subject:** Re: Pathology results

This envelope is for use

UPS Next Day Air®
UPS Worldwide Express®
UPS 2nd Day Air®

Do not use this envelope for:



ERIC SMITH
9542882265
ERIC SMITH
520 NORTH OCEAN BLVD.
POMPANO BEACH  FL 33062

1.0 LBS     LTR        1 OF 1

**SHIP TO:**
CLERK OF THE COURT
U.S. FEDERAL COURTHOUSE
THE CLERK OF THE COURT
ROOM 109
299 EAST BROWARD BOULEVARD
**FORT LAUDERDALE   FL 33301**

**FL 333 0-04**

**UPS NEXT DAY AIR**                    **1**
TRACKING #: 1Z 67V 93E 24 0403 1036



BILLING: P/P
DIRECT DELIVERY ONLY
SIGNATURE REQUIRED

XDL 19.10.10      NV45 20.0A 10/2019



Serving you for more than 100 years
United Parcel Service.

UPS   United Parcel Service

010195112  4/14 PAC

1 Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

-800-PICK-UPS® (1-800-742-5877) or visit UPS.com®.

ic Shipments

ify for the Letter rate, UPS Express Envelopes may only contain
pondence, urgent documents, and/or electronic media, and must
8 oz. or less. UPS Express Envelopes containing items other than
listed or weighing more than 8 oz. will be billed by weight.

ional Shipments

PS Express Envelope may be used only for docum‑
Certain countries consider electronic media as d‑
m/importexport to verify if your shipment is clas

ify for the Letter rate, the UPS Express Envelope r
press Envelopes weighing more than 8 oz. will be

press Envelopes are not recommended for shipm
ng sensitive personal information or breakable ite
equivalent.

usable Express E
ter Size

ce paper waste by using this envel
r to return to sender or with anoth
euse instructions on flap above.

ision Green℠

ion Green is UPS's environmental p
ursuit of sustainable business practi
cample, this envelope is made from
al and is both reusable and recycl

100% Recycled fiber
80% Post-Consumer